# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRA LIFESCIENCES CORPORATION<br>311 Enterprise Drive<br>Plainsboro, NJ 08536<br><br>    Plaintiff,<br><br>  v.<br><br>STEVEN JOHNSON<br>12 Prospect Street,<br>Oyster Bay, NY 11771<br><br>AND<br><br>JAMES PLANK<br>6739 S Crestview Drive,<br>Gilbert, AZ 85298<br><br>    Defendants. | Civil Action No. _____<br><br><br>**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiff Integra LifeSciences Corporation ("Integra" or the "Company"), by and through its undersigned counsel, hereby brings the following Verified Complaint seeking injunctive relief and monetary damages against Defendants Steven Johnson ("Johnson") and James Plank ("Plank") (collectively, "Defendants"), and avers as follows:

## PRELIMINARY STATEMENT

1. This action arises from the Defendants' unlawful scheme with their new employer, Avita Medical Limited ("Avita"), a direct competitor of Integra, and several other former Integra employees to convert Integra's confidential, proprietary, and trade secret information and customer goodwill in order to unfairly compete against Integra in the regenerative technologies marketplace. As part of this scheme, Avita has targeted at least 14 key employees of Integra, including the two Defendants, who possess Integra's confidential, proprietary and trade secret information and who, while employed by Integra, have established

and fostered customer relationships on behalf of Integra by using the significant training and confidential, proprietary, and trade secret information provided to them by Integra.

2. Until recently, each of the Defendants worked as a Regenerative Business Leader for Integra and was charged with, among other duties, leading marketing and promotional campaigns within their assigned region, as well as driving new product launches. As Regenerative Business Leaders, the Defendants also partnered with Integra's sales team and regional sales management, participated in regional and national sales meetings, and helped develop regenerative sales strategy for their overall regions and for key accounts within the regions.

3. Each of the Defendants has now entered into an employment relationship with Avita, a competitor of Integra. They are performing the exact same sales and marketing work for Avita as they performed for Integra, selling and marketing a competitive product to that which they sold and marketed while employed at Integra, and targeting the exact same markets as they targeted at Integra.

4. Each Defendant's employment at Avita is in direct violation of their continuing obligations to Integra. Specifically, each Defendant is bound by an Employee Noncompetition, Nondisclosure, Non-Solicitation And Developments Agreement for Sales Representatives, Sales Managers and Other Sales Personnel (the "Agreements") that they signed when they began their employment with TEI Medical Inc., a predecessor of Integra.

5. For one year after the end of their employment with Integra, the Agreements prohibit the Defendants from engaging "in any business activity which is in competition with the products or services being developed, manufactured, marketed, licensed, sold or otherwise provided by [Integra]." Agreements at Section 9. A copy of Defendant

Johnson's Agreement is attached as Exhibit 1 and a copy of Defendant Plank's Agreement is attached as Exhibit 2. The Defendants' conduct, coordinated with Avita and the other former Integra Regenerative Business Leaders, leaves no doubt that their objective is to recreate Integra's business and operational model at Avita, trading on Integra's confidential, proprietary, and trade secret information and customer goodwill.

6. Integra hereby seeks preliminary and permanent injunctive relief against the Defendants to enforce the terms of their Agreements, halt the Defendants' unlawful conduct, and protect Integra's confidential information, trade secrets, and goodwill.

7. Integra also seeks monetary damages to compensate it for losses suffered as a result of Defendants' unlawful conduct.

## THE PARTIES

8. Plaintiff Integra LifeSciences Corporation is a Delaware corporation with its worldwide headquarters located at 311 Enterprise Drive, Plainsboro, NJ 08536. Its principal place of business is New Jersey. Integra also has a large base of employees at its North Billerica, MA location.

9. Defendant James Plank is an individual and a citizen of the State of Arizona, residing at 6739 S. Crestview Drive, Gilbert, AZ 85298. He was employed as a Regenerative Business Leader for Integra until his resignation on November 9, 2018.

10. Defendant Steven Johnson is an individual and a citizen of the State of New York, residing at 12 Prospect Street, Oyster Bay, NY 11771. He was employed as a Regenerative Business Leader for Integra until his resignation on November 8, 2018.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as diversity of citizenship exists and the amount in controversy exceeds $75,000.00, exclusive of attorneys' fees and costs.

12. Venue is proper in this Court because the Defendants agreed that "Any claims or legal actions by one party against the other arising out of the relationship between the parties contemplated herein (whether or not arising under this agreement) shall be governed by the laws of the Commonwealth of Massachusetts and shall be commenced and maintained in any state or federal court located in Massachusetts, and both parties hereby submit to the jurisdiction and venue of any such court." *See* Exhibits 1 and 2.

## FACTUAL ALLEGATIONS

### A. The Business of Integra

13. Integra is a world leader in medical technology. The Company was founded in 1989 with the acquisition of an engineered collagen technology platform used to repair and regenerate tissue. Since then, Integra has developed numerous product lines from this technology for applications ranging from burn and deep tissue wounds to repair of dura mater in the brain. The Company has expanded its base regenerative technology business to include surgical instruments, neurosurgical products, advanced wound care and orthopedic hardware, through several global acquisitions and by developing products internally to further meet the needs of its customer.

14. Integra employs approximately 4,400 people dedicated to limiting uncertainty for surgeons, so that they can concentrate on providing the best care for their patients.

15. Integra provides innovative healthcare solutions in more than 130 countries through its nearly 50 offices and its worldwide distribution.

16. In one portion of its business, Integra sells regenerative technology products that can be used to provide treatment for acute wounds such as burns, chronic wounds including diabetic foot ulcers, surgical tissue repair including hernia repair, peripheral nerve repair and protection, and tendon repair.

17. Developing and marketing cutting-edge technology are critical to Integra's success in a very competitive business environment. Integra is known in the industry as having some of the most innovative products in its space.

18. Integra is in a highly competitive market. Integra markets its products throughout the United States and abroad and competes throughout the world with other regenerative technologies manufacturers, including Avita.

19. Integra engages in diverse activities to further the advancement of patient care by working with educators, researchers and volunteers to advance knowledge, understanding and delivery of medical care.

20. Integra invests millions of dollars annually in resources to develop its technology, systems and products. Because regenerative technology products represent a fast-growing, high-margin opportunity for Integra, it allocates a large portion of its research and development budget to these projects. Integra's regenerative technology development program applies its expertise in bioengineering to a range of biomaterials including natural collagen and human tissues as well as synthetics such as polymers. These unique product designs are used for neurosurgical and orthopedic surgical applications, as well as dermal regeneration, including the healing of chronic and acute wounds, tendon and nerve repair.

21. Given the innovation that Integra brings and the investment that it makes in its business, maintaining the confidentiality of Integra's proprietary information and trade secrets is critical to its business success and to prevent competitors or would-be competitors from gaining an unfair advantage.

22. To protect its business relationships and its confidential information, Integra requires its sales employees such as the Defendants, as a condition of employment, to be bound by post-employment non-compete and non-disclosure obligations.

23. At the termination of employment, Integra requires its employees to return, and not retain copies of, all correspondence files, business files, customer and prospect lists, price lists, product lists, software, manuals, technical data, forecasts, budgets, notes and other material that contain any of this information and other similar information upon separation from employment.

**B. The Defendants' Extensive Knowledge of and Access to Integra's Confidential and Proprietary Information**

24. In connection with the Defendants' duties for Integra, they acquired trade secrets, proprietary information and confidential information regarding Integra's product specifications, designs and attributes; costs and pricing information; manufacturing methods and quality systems; business and marketing plans and programs and launch strategies; customer lists and sales information; budgets, forecasts, product sales and related information; research and testing data, unique product development, regulatory and quality processes, business strategies, and products and services that are soon to launch, in production, or in the Integra pipeline.

25. Integra maintained and continues to maintain such information in the strictest confidence. Among the precautions Integra takes is to communicate to all employees

that such information should be kept confidential, used only as authorized and should not be communicated to third parties or competitors of Integra.

26. Integra also ensures that all employees who have access to its confidential information are subject to non-disclosure obligations.

27. The Defendants have been exposed to, had substantial access to, possessed, and frequently used trade secrets, proprietary information and confidential information of Integra.

28. The Defendants regularly participated in meetings with management at which such trade secrets, proprietary information and confidential information as sales, marketing, technology, product development, manufacturing, and pricing information were discussed.

29. Such information is not readily available through any independent source, nor has there been any public disclosure of Integra's confidential information by any individual or entity including, but not limited to, Integra, or any of its affiliates or its or their respective officers, employees, agents or representatives.

30. Upon information and belief, the Defendants inevitably will use Integra's confidential information to benefit themselves and Avita at the expense of Integra.

31. Upon information and belief, the Defendants will continue to use Integra's confidential information if they are not enjoined from doing so.

32. The Defendants acquired their knowledge of such information only through their employment with Integra, and under circumstances giving rise to a duty to maintain the secrecy and integrity of such information.

### C. The Defendants' Employment With Integra as Regenerative Business Leaders

33. Until their resignations, the Defendants worked as Regenerative Business Leaders at Integra. Integra Regenerative Business Leaders drive business initiatives that positively impact regional performance of Integra's regenerative product portfolio. Regenerative Business Leaders work with Integra's Regional Sales Management and Sales Specialists to identify opportunities that produce significant new Regenerative Sales. Regenerative Business Leaders possess a deep understanding of Integra's regenerative products and know how to effectively position these products with the customer. Regenerative Business Leaders have a demonstrated record of consistent success selling collagen based products to surgeons for use in chronic and acute wounds (inclusive of burns) and plastic and reconstructive surgery.

34. As Regenerative Business Leaders at Integra, the Defendants led regional sales planning, execution, and monitoring at the Company. To that end, the Defendants regularly:

- participated in regional and national sales meetings;
- partnered with Regional Sales Management to develop regenerative sales strategy for their overall region and for key accounts within the region;
- provided planning tools to full-line sales reps (and distributors) to facilitate territory sales planning;
- developed metrics with Regional Sales Management to monitor regional sales performance to goals;
- drove field level activities to cultivate new accounts while growing business at existing accounts;
- managed deployment of key resources at regional level to drive business performance;
- created monthly reports analyzing regional business performance;
- developed business plans for key accounts and developed key relationships in targeted facilities;
- facilitated key customer meetings to drive existing and new business;

- provided expertise in clinical settings and at convention/sales meetings to promote sales and further Integra's reputation in the marketplace;
- provided expertise for national and regional surgeon education and product sales training of company representatives;
- provided updates to the Regional Manager and Regional Sales Team regarding competition, product use, clinical updates, reimbursement and other important business metrics;
- conducted regular field sales visits with regional salespeople to assist in sales execution and professional development of the team; and
- conducted product presentations or instruction to small and large groups to promote adoption and increased utilization by Integra's customers.

35. In the course of their employment, the Defendants were exposed to, and regularly worked with, Integra's most valuable Confidential Information, including technical and design data, product manufacturing methods, sales, budget, and forecast information; special customer requirements; confidential competitive information, performance data, information related to future products and pipeline information; pricing and cost information; and product improvement ideas.

36. This broad exposure to Integra's product lines and trade secret information is one of the reasons that Integra required that the Defendants, as a condition of employment, be bound by non-competition and non-disclosure restrictions.

D. **The Defendants' Agreements With Integra**

37. Upon commencing employment with TEI, a predecessor of Integra, each of the Defendants executed an Employee Noncompetition, Non-Solicitation And Developments Agreement for Sales Representatives, Sales Managers and Other Sales Personnel (the "Agreements").

38. The Defendants agreed, *inter alia*, that "During [their] employment with the Company and for a period of one (1) year after the termination or cessation of [their] employment with the Company for any reason," they would not "directly or indirectly, alone or

9

as a partner, officer, director, employee, consultant, agent or independent contractor of any company or business organization, engage in any business activity which is in competition with the products or services being developed, manufactured, marketed, licensed, sold or otherwise provided by the Company."

39. The Defendants also agreed, *inter alia*, that "During [their] employment with the Company and for a period of one (1) year after the termination or cessation of [their] employment with the Company for any reason," they would not "directly or indirectly . . . recruit, solicit or induce, or attempt to induce, any employee or consultant of the company to terminate or otherwise cease his or her employment or consulting relationship with the Company, or assist in the recruitment or solicitation of any employee or consultant of the Company."

40. In addition to the foregoing, the Agreements prohibit the Defendants from revealing any of Integra's Confidential Information at any time.

41. The Agreements define "Confidential Information" to include, *inter alia*, "trade secrets or confidential information respecting inventions, products, designs. methods, know-how, research, strategies, techniques. systems, processes, software programs (including software used pursuant to a license agreement), works of authorship, customer lists, prospect and supplier lists and contacts at or knowledge of customers and prospects. projects, plans, proposals and personnel data. Confidential Information shall also include any information that a person working in the life sciences industry would consider to be confidential."

42. The Agreements provide that they "shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts."

43. In their Agreements, the Defendants acknowledge that a breach of their covenants shall entitle Integra to, *inter alia*, injunctive and other equitable relief.

E. **The Defendants' Scheme With Avita To Unfairly Compete With Integra**

44. Unlike Integra's established, successful business, Avita is a newer company that reported significant losses this year prior to hiring the Defendants and other Integra employees. To create growth, Avita embarked on a systemic scheme to raid Integra's key employees, including Defendants, with the objective of improperly converting to Avita, among other things, (1) knowledge of Integra's confidential, proprietary and trade secret information, and (2) relationships that the Defendants had built with Integra's customers.

45. One of Avita's "Requirements for Successful U.S. Launch" – obtaining an "Experienced S&M leadership and field force" – only became "in Place" through Avita's raid of Integra's Regenerative Business Leaders including the two Defendants. In the last three months alone, presumably with complete knowledge of their covenants owing to Integra, Avita has solicited 14 out of Integra's 15 Regenerative Business Leaders, including: (1) Dominic Albanese; (2) Charles Carter; (3) Austin Dupuis; (4) Brent Hancock; (5) Charles Kidd; (6) Ward Poston; (7) Robert Sheedy; (8) Stephen Stock; (9) John Twomey; (10) Kenneth Wagener; (11) Jefferson Walker; and (12) Matthew Walton, in addition to (13) Defendant Steven Johnson and (14) Defendant James Plank.

46. Avita also has sought to extend its corporate raid beyond just Regenerative Business Leaders and solicited Integra's Regional Sales employees.

F. **The Defendants Violate the Agreements and Commence Employment with Integra's Direct Competitor Avita**

47. On or about November 1, 2018, Integra learned that the Defendants and four other Regenerative Business Leaders had obtained positions with Avita that would directly

11

violate their Agreements. Specifically, the Defendants informed Integra personnel that they were resigning their positions with Integra to take positions with Avita as Regenerative Tissue Specialists – the same function as the Regenerative Business Leaders at Integra.

48. Avita is a direct competitor of Integra. Like Integra, Avita invents, designs, and manufactures regenerative medicines with a technology platform designed to address unmet medical needs in patients with burns, chronic wounds, and aesthetics indications.

49. Avita currently has one product RECELL, which will be launched nationwide the first week of January 2019.

50. RECELL's indication for use, which was approved by the Food and Drug and Administration ("FDA"), is "treatment of acute thermal burn wounds in patients 18 years of age and older." The FDA defines an indication for use as "a general description of the disease or condition the device will diagnose, treat, prevent, cure, or mitigate, including a description of the patient population for which the device is intended." 21 C.F.R. § 814.20(b)(3)(i). Indication for use is a critical term of art in the medical device industry, as it defines how and for what condition a company may market its products.

51. Integra markets and sells many products with similar indications for use as Avita's product, RECELL. In other words, Integra's products treat the same condition as Avita's product. Johnson admitted in an email on March 6, 2018, that he "view[ed] Recell as a competitive threat" to Integra. A copy of this email is attached hereto as Exhibit 6.

52. For example, Integra's Dermal Regeneration Template is indicated for "for the post-excisional treatment of life threatening full-thickness or deep partial-thickness thermal injuries where sufficient autograft is not available at the time of excision or not desirable

due to the physiological condition of the patient." Of note here is the phrase "deep partial-thickness thermal injuries." In layman's terms, this is a third degree burn.

53. Integra's Bilayer Matrix Wound Dressing is also indicated for the "management of wounds including: partial and full-thickness wounds . . . ."

54. In other words, both Integra and Avita market and sell products used to treat burn wounds, including deep partial thickness wounds. Avita has published documents in which it notes RECELL can treat deep partial thickness wounds alone, without any product such as Integra's Dermal Regeneration Template or Bilayer Matrix Wound Dressing to stimulate growth of the dermis. *See* Avita Medical, Company Overview, attached as Exhibit 3.

55. RECELL can be used to treat a deep partial thickness burn where Integra's products would be used in its place. It is in this area – the deep partial thickness wound – where Integra and Avita currently compete. Avita admits as much in its Company Overview presentation, *see* Exhibit 3.

56. Avita also plans to compete with Integra in "Traumatic Wounds" and "Rejuvenation." *Id.* Integra already has products on the market that help rejuvenate dermis and treat traumatic wounds. Put differently, not only do Integra and Avita already compete, Avita is planning to compete with Integra in the future as well.

57. In a Company Overview presentation, *see* Exhibit 3, and a November 30, 2018 presentation to investors, Avita highlighted that RECELL competes with Integra's Dermal Matrix line of products, *see* Exhibit 4. Also, in a November 15, 2018 article from Business Wire, Avita noted it was "quite pleased with how quickly [it was] able to recruit a highly experienced, specialized field force." It notes that the Defendants are currently "completing a

rigorous training program, including on-site training within burn centers, in preparation for the market launch of the RECELL System." *See* Exhibit 5.

58. Upon learning that Avita had hired a number of recently departed employees of Integra in what appeared to be a concerted effort to raid key employees of the Company, Integra's counsel sent a letter to Avita on November 7, 2018 via Federal Express informing it of Integra's belief that certain of its former employees, including Defendants, who had been hired by Avita were in violation of their Agreements and that it would like to resolve this matter without the Court's intervention. A copy of the letter is attached hereto as Exhibit 7.

59. On November 16, 2018, counsel for Avita confirmed that "the Integra employees that have come to work at Avita are selling our client's only product – ReCell," but falsely stated that "Avita does not compete with Integra in any way" and that "there are no other products in the U.S. market which compete with ReCell." A copy of the letter is attached hereto as Exhibit 8.

60. On November 20, 2018, Integra filed suit against Avita, Charles Carter, Austin Dupuis, John Twomey, and Matthew Walton in the United States District Court for the District of New Jersey. *See Integra LifeSciences Corporation v. Avita Medical, LTD, et al*., No. 3:18-CV-16349-BRM-LHG (D.N.J.). The individual defendants' agreements in that matter have a choice of venue provision selecting New Jersey as the appropriate forum.

61. While conducting a forensic review of Defendants' Integra email accounts, on December 19, 2018, Integra discovered that Plank had a copy of his Agreement, which Integra had not been able to locate previously. On that same day, Integra located a more legible copy of Johnson's Agreement confirming that he signed it.

62. On December 20, 2018, Integra contacted Defendants' counsel and requested they provide "pertinent information" regarding the Defendants' employment following their separation from Integra, including "their duties and responsibilities at Avita Medical, LTD, as well as the territory to which they will be assigned," in order to assist Integra in determining their "continued compliance" with their respective Agreements, as is required by Paragraph 13 of the Agreements. Defendants' counsel has not provided the requested information.

## COUNT I
## BREACH OF CONTRACT

63. The preceding paragraphs are incorporated by reference as if fully set forth herein.

64. The Agreements are valid and enforceable as written because they meet Massachusetts state contract law requirements, reasonably protect and advance Integra's legitimate business interests, and the balance of the equities favors enforcement of the Agreements.

65. The Defendants continue to be bound by the Agreements.

66. Integra fulfilled its obligations under the Agreements including by agreeing to employ the Defendants and providing them with confidential information.

67. By the conduct described above, the Defendants have materially breached the express provisions of the Agreements, including, but not limited to, paragraphs 3, 9, and 10 of the Agreements.

68. As a direct and proximate result of the Defendants' breaches of the Agreements, Integra has suffered and will continue to suffer harm and injury, including, but not limited to, loss of trade secrets, confidential information, competitive advantage, goodwill, income, revenue, customers, and market share.

69. As a direct and proximate result of the Defendants' breaches of contract, Integra has suffered, and will continue to suffer, immediate irreparable harm unless the Defendants are enjoined as requested below.

70. Greater injury will be inflicted on Integra by the denial of this relief than will be inflicted on the Defendants by granting of this relief.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS: Massachusetts General Laws Chapter 93, Sections 42, 42A**

71. The preceding paragraphs are incorporated by reference as if fully set forth herein.

72. Upon information and belief, Defendants have actually misappropriated or threaten to misappropriate Integra's confidential and proprietary information that qualifies as trade secrets, as defined under Mass. Gen. Laws Ch. 93, § 42, without the express or implied consent of Integra. The Defendants are working in a directly competitive capacity with Integra in violation of the terms of their Agreements and have used or disclosed, or will inevitably use or disclose Integra's confidential trade secret information in performing their duties for Avita.

73. The Defendants have used or disclosed, or will inevitably use or disclose this information in performing their duties for Avita.

74. Integra has expended substantial resources in developing its trade secrets for its exclusive benefit. Integra's trade secrets derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.

75. Integra does not disclose its trade secrets to its competitors and has made reasonable efforts to protect them from unauthorized disclosure.

76. Integra communicated its trade secrets to the Defendants in confidence and with the understanding that they would be used by them solely in the conduct of Integra's business. The Defendants knew, as evidenced by the Agreements, that Integra intended for all such information to remain confidential and to be used by them solely in the conduct of Integra's business.

77. As a direct and proximate result of Defendants' misappropriation of trade secrets, Integra has suffered, and will continue to suffer, irreparable harm.

78. As a direct and proximate result of Defendants' misappropriation of trade secrets, Integra has suffered substantial damages, the precise amount of which will be determined at trial.

79. Defendants' conduct has been willful, malicious, and outrageous and undertaken with reckless indifference to the rights or interests of Integra.

**JURY DEMAND**

Integra demands a trial by jury as to all claims that may be tried to a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Integra requests the following relief:

(a) That the Defendants be enjoined, preliminarily and permanently through at least November 8, 2019, from being employed by or otherwise providing competitive services to Avita;

(b) That the Defendants be enjoined, preliminarily and permanently, from further breaches of the Agreements;

(c) That Defendants be enjoined, preliminarily and permanently, from retaining, using, or disclosing any of Integra's trade secrets, proprietary information or confidential information;

(d) That Defendants be directed to immediately return to Integra all company property, as well as all copies of the Company's documents, electronic files, and information;

(e) That Defendants be ordered to promptly produce copies of all such Company documents, electronic files, and information during the expedited discovery process related to Integra's Motion for a Preliminary Injunction;

(f) That Integra be awarded actual and compensatory damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, including, but not limited to, all costs of the investigation into Defendants' unlawful actions;

(g) That Integra be awarded such other and further necessary and proper relief as the Court may deem just and proper.

Dated: December 28, 2018

Respectfully submitted,

/s/ *Siobhan E. Mee*
Siobhan E. Mee, BBO #640372
MORGAN, LEWIS & BOCKIUS LLP
One Federal St.
Boston, MA 02110-1726
(617) 951-8265
(617) 341-7726
siobhan.mee@morganlewis.com

Sarah E. Bouchard (*pro hac vice* forthcoming)
Brandon J. Brigham (*pro hac vice* forthcoming)
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000
Fax: 215.963.5001
sarah.bouchard@morganlewis.com
brandon.brigham@morganlewis.com

## VERIFICATION

I, Christopher Bartlett, hereby verify under penalty of perjury that I am the Vice President of Sales, US Wound Reconstruction, Orthopedics and Tissue Technologies for Integra LifeSciences Corporation. I further verify that the factual information as set forth in Plaintiff Integra LifeSciences Corporation's Verified Complaint for Injunctive Relief and Damages is true and correct to the best of my knowledge, information and belief.

Dated: December 26, 2018                                   _____